IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY | § | |
| | § | |
| VS. | § | CIVIL NO. 4:09-CV-348-Y |
| | § | |
| OOCL (USA), INC. | § | |

## ORDER DENYING MOTION TO TRANSFER

Pending before the Court is the Motion to Transfer Venue (doc. #6) filed by defendant OOCL (USA), Inc. After review, the Court concludes that OOCL has not made a sufficient showing of good cause to support its motion to transfer. As a result, the Court will deny the motion.

I. Background

Ihara Chemical Industry Company, Ltd. ("Ihara"), or Bayer Cropscience, LP ("Bayer"), contracted with Suttons International (NA), Inc. ("Suttons"), acting as a non-vessel owning common carrier, for the carriage of o-chlorobenzlchloride. Suttons was to transport the chemical from Tokyo, Japan, to Kansas City, Missouri, by way of a Los Angeles port. Suttons contracted with OOCL, a for-hire carrier of cargo, to ship the chemical from Tokyo to Los Angeles. In turn, OOCL contracted with BNSF Railway Company ("BNSF") to ship the chemical from Los Angeles to Kansas City by rail.

The chemical, stored in four tank containers, was loaded on an OOCL ship and transported to the Los Angeles port. After the voyage

from Tokyo to Los Angeles, the containers were discharged to be transported by BNSF to Kansas City. But during the trip from Los Angeles to Kansas City, it was discovered that one of the containers was leaking. O-chlorobenzlchloride is apparently a toxic and hazardous material. Consequently, a HAZMAT crew and local authorities responded to the site of the leak, assisting in completing the transportation of the chemical to Kansas City and containing the related chemical spill. The spill led to the evacuation of some houses, the medical treatment of approximately a dozen BNSF employees, and an investigation into the spill's environmental impact. Ultimately, a clean-up effort was undertaken.

After the spill, OOCL filed suit in the United States District Court for the Southern District of New York against Suttons, Bayer, and Ihara seeking a judgment that these entities must indemnify and hold OOCL harmless for any liability assessed against it as a result of the spill. OOCL further sought damages and expenses directly or indirectly arising from the spill that were caused by any negligence, breach of contract, or breach of warranty by these entities. According to OOCL, cargo moved under its agreement with Suttons is subject to the terms of OOCL's bill of lading. Generally, the bill of lading provides OOCL with a right of indemnification against any "merchant." OOCL argues that Suttons, Bayer, and Ihara all fall within the bill of lading's definition of "merchant."

Ihara was the next to file suit--a declaratory-judgment action

in the United States District Court for the District of Kansas. In that action, Ihara seeks, among other things, a judgment allowing it to perform destructive testing on the storage tank involved in the spill to determine the cause of the leak.

BNSF then filed this suit in a Texas state court. BNSF argues that by failing to reimburse it for expenses incurred in relation to the spill, and by failing to indemnify it against third-party claims, OOCL has breached its contract with BNSF. BNSF further argues that OOCL was negligent in its inspection and selection of the storage tank involved in the spill. OOCL removed the case to this Court. Although as originally filed OOCL's motion to transfer sought to have this case transferred to either the Southern District of New York or the District of Kansas, it has since abandoned its request for transfer to the District of Kansas.

II. Discussion

   A. Standard for Transfer of Venue

   OOCL has moved the Court for a transfer of venue under 28 U.S.C. § 1404(a). This statute provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first question under the change-of-venue statute is whether the suit originally could have been filed in the proposed transferee venue.

*See In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Once this is established, it must be determined whether the convenience of the parties and witnesses and the interest of justice weigh in favor of the transfer. This determination must be made in light of the burden of proof created by plaintiff's choice of venue. *See In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 n.10 (5th Cir. 2008) (plaintiff's choice of venue must "be treated as a burden of proof question"). The plaintiff's choice of venue is not an independent factor to be considered in a § 1404(a) analysis. *Id*. Instead, the plaintiff's choice "places a significant burden on the movant to show good cause for the transfer." *Id*.

"When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id*. (quoting § 1404(a), alterations in *Volkswagen*). The determination of whether good cause has in fact been established "turns on a number of public and private interest factors." *Action Indus., Inc. v. United States Fidelity & Guaranty Company*, 358 F.3d 337, 340 (5th Cir. 2004). The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and, (4) all other practical problems that make trial of

4

a case easy, expeditious, and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and, (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive, and none of them is dispositive. *See id.; see also In re Volkswagen*, 545 F.3d at 315. Even so, consideration of these factors is "appropriate for most transfer cases." *In re Volkswagen*, 545 F.3d at 315.

B. Analysis

   1. Propriety of Proposed Transferee Venue

The first issue in analyzing a motion to transfer venue under § 1404(a) is whether the suit could have originally been filed in the proposed transferee court. *See In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). According to OOCL, BNSF has agreed to jurisdiction in New York, pointing to the forum-selection clause in their agreement that states "Shipper consents to the non-exclusive jurisdiction of the courts of either the State of Texas or the State of New York in any action commenced under this agreement. All actions brought to enforce this agreement shall be sought in Texas (Tarrant County) or New York." (Mot. App. at Ex. 6.) But "Shipper" in the clause refers to OOCL, not BNSF. And as explained in the

5

order denying BNSF's motion to remand, the first sentence of the clause manifests only a non-exclusive consent to the jurisdiction of the state courts of the named states, as opposed to federal courts located in those states. *See Dixon v. TSE Int'l*, 330 F.3d 396, 397-98 (5th Cir. 2003) (concluding that federal courts are not "of" the state in which they are located).

Even so, OOCL notes that it has consented to the jurisdiction of the Southern District of New York and BNSF acknowledges that this suit could have been brought there. Thus, OOCL has met its burden to show this suit "might have been brought there," and that court's jurisdiction over BNSF plays no role in the Court's analysis. *See Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140 (5th Cir. 1984) *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987) (noting that section 1404(a) does not allow transfer to a transferee court that "would have lacked jurisdiction over *the defendant*") (emphasis added); *F.T.C. v. Watson Pharmaceuticals, Inc.*, 611 F. Supp. 2d 1081, 1090 (C.D. Cal. 2009) (concluding that section 1404(a) requires an inquiry that "asks if the transferee court has jurisdiction over the defendants, not the plaintiff") (citing 15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3845 (3d ed. 2007) ("[A] case cannot be transferred to a district in which the defendant is not subject to service of process and where, therefore, in personam jurisdiction cannot be obtained over *the defendant*.")) (emphasis added).

6

### 2. Private- and Public-Interest Factors

OOCL's argument does not address the private- and public-interest factors in any meaningful way. Instead, the focus of OOCL's argument is that the New York suit is related to this suit and was filed first. More specifically, OOCL explains that while BNSF seeks indemnity from it in this suit, it is seeking indemnity from Ihara, Bayer, and Suttons in the previously-filed New York suit. The suits are based on the same incident and, therefore, will involve discovery and proof of many of the same facts. OOCL argues that transfer to the Southern District of New York for consolidation will prevent duplicative discovery and foster an efficient resolution of this case. Moreover, OOCL argues that jurisdiction over Ihara, a Japanese company, does not exist in this Court, but that Ihara has consented to the jurisdiction of the Southern District of New York.

In response, BNSF argues, and this Court agrees, that although the suits may be somewhat factually related, OOCL's obligation to indemnify BNSF is a wholly separate legal issue from OOCL's right to be indemnified by the other entities. OOCL's argument, in essence, is that although it consented to the jurisdiction of the courts of the State of Texas, and although suits to enforce its agreement with BNSF must be filed in Texas or New York, this suit should be transferred to the Southern District of New York so that it may conveniently pursue claims against other entities based on

7

other agreements. OOCL cites the "first-to-file" rule, which requires that related cases proceed in the court in which the first related case was filed[1], as authority for transferring this case to the Southern District of New York. But as even the case cited by OOCL demonstrates, the first-to-file rule does not apply when there is merely some relation between the first and subsequently filed actions. *See Save Power*, 121 F.3d at 951 (detailing several issues that were before both courts). Rather, the rule applies when there is a likelihood of substantial overlap of substantive issues. That is, although the subsequent suit need not involve the identical parties and issues as the first-filed suit, there must be such identity as to cause the potential for conflicting rulings or ruling by the second court that interferes with the power of the first. *See id.* at 950-51 (citing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)); *see also Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. 1999)("The concern manifestly is to avoid the waste of duplication, to avoid rulings [that] may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.").

OOCL's vague assertions do not establish a likelihood of substantial overlap. This is confirmed by a review of the pleadings in this case and in the New York suit. BNSF seeks to enforce its right to indemnity created by its contract with OOCL and to hold

---

[1] *Save Power v. Syntek Fin. Corp.*, 121 F.3d 947, 950-51 (5th Cir. 1997)

8

OOCL responsible for any negligence it committed in maintaining, inspecting, and selecting the storage container involved in the spill. In the New York suit, OOCL does not seek contribution from Ihara, Suttons, or Bayer for any liability it may have to BNSF; does not seek to have its losses related to the spill or liability to BNSF apportioned among itself and these other entities; and does not seek to partially mitigate its losses or liability to BNSF by recovering from these other entities. OOCL seeks contractual indemnity from these entities based on contracts to which BNSF is not a party. The New York suit does not include a declaratory-judgment action against BNSF seeking to settle OOCL's obligation to indemnify it. And although both this suit and the New York suit involve claims of negligence, OOCL's negligence claims are merely a predicate for indemnity from Ihara, Bayer, and Suttons and, again, could have no legal impact on BNSF's recovery against OOCL. Nor has OOCL shown, through its arguments before this Court or its pleadings in the Southern District of New York, that any negligence by Ihara, Bayer, or Suttons is factually related to the negligence claimed by BNSF--OOCL's negligent maintenance, inspection, and selection of containers. Neither OOCL's arguments or a review of the pleadings demonstrates a likelihood that any ruling by this Court on BNSF's ability to recover from OOCL will have any affect on the New York suit. Consequently, the first-to-file rule does not require transfer of this case. *See Cadle Co.*, 174 F.3d at 603 (noting that the

9

court of first filing takes priority as a product of its jurisdiction over a common subject matter).

OOCL also insists that Ihara, Bayer, and Suttons, must defend it against any suits arising from the incident. OOCL can join these entities and demand that they provide such defense, or demand that a defense be provided as part of its New York suit to enforce its agreements with these entities. As to Ihara, which OOCL insists without significant explanation is not subject to this Court's jurisdiction, and indeed, as to OOCL's complaints that trying this suit in this Court will present undue difficulty generally, the fact is that OOCL finds itself before this Court because it agreed to the jurisdiction of the courts of the State of Texas and removed this suit, originally filed by BNSF in a Texas state court, to this court. Thus, OOCL's complaints of inconvenience under the particular facts of this case notwithstanding, its contract with BNSF indicates that this Court is a convenient forum. *See Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642, 650 (N.D. Tex. 2001) (noting that a venue selected by the parties is presumably convenient for the parties).

Moreover, OOCL's arguments are contradictory. OOCL argues that the forum-selection clause supports jurisdiction over BNSF in the Southern District of New York and transfer of this case to that court. But in its opening brief OOCL characterizes a transfer of this case to the Southern District of New York as an intermediate

10

step to having all of the related cases transferred to and consolidated in the District of Kansas. OOCL further states that all of the parties in the New York suit have stipulated to such transfer and consolidation. And although OOCL, in its reply brief, has abandoned its request for this case to be transferred directly to Kansas, it retains the right to continue to seek a transfer to Kansas. Thus, OOCL at once invokes the forum-selection clause to support the requested transfer to New York while seeking to have all of the related cases ultimately transferred to Kansas--a course of action that would essentially negate the forum-selection clause given that Kansas clearly does not fall within the clause. The Court is loathe to take such action in contradiction of the plain terms of the agreement entered by BNSF and OOCL. *See Mitsui & Company (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (concluding that forum-selection clauses are presumptively valid and enforceable). OOCL insists that the Southern District of New York is the proper court to decide whether all the related cases should be transferred to Kansas. But such insistence only serves to reduce the weight to be given to OOCL's relinquishment of the portion of its motion seeking direct transfer to Kansas and to expose OOCL's true intentions. The Court will not facilitate OOCL's attempt at securing a better forum in which to litigate issues related to the forum-selection clause. This case is before this Court, and this Court will decide whether transfer is appropriate. With this said,

11

the Court turns to the private- and public-interest factors.

                  a.   Private-Interest Factor: Access to Proof

Both parties acknowledge that the spill occurred in Kansas. Hence, access to physical evidence is no better in the Southern District of New York than in this Court. And to the extent that documentary or electrically-stored data is at issue, OOCL has pointed to no accessability problems that exist in the Northern District of Texas. OOCL's complaint is that jurisdiction over Ihara, a Japanese company, only exists in the Southern District of New York and, consequently, only that court can properly enforce and regulate discovery from Ihara. More generally, OOCL complains that allowing this suit to proceed parallel to the New York suit will result in duplicative discovery.

But as noted above, OOCL's concerns bear only upon its suit against Ihara, Bayer, and Suttons, not on BNSF's suit against OOCL. While discovery of some of the most basic facts surrounding the spill itself may be duplicated, BNSF's suit will turn on proof of the terms of its agreement with OOCL and OOCL's actions with respect to the selection and maintenance of the storage container that may have caused the leak. OOCL's suit against Ihara, Bayer, and Suttons appears to be essentially contractual and will, therefore, focus on proof of whether any or all of these entities is a "merchant" as used in the defense-and-indemnity clause in OOCL's bill of lading.

12

OOCL does claim that these entities are negligent, but it pleads no facts in support of this theory of recovery, which is pleaded only as an alternative basis for requiring that these entities indemnify OOCL. All of OOCL's factual pleadings focus on its contracts with Ihara, Bayer, and Suttons and the bill of lading and, given the few facts that are pleaded, it appears that any negligence by these entities would be factually separate from any negligence by OOCL. Hence, OOCL's fears of duplicative efforts are overstated, and this factor does not favor transfer.

> b.  Private-Interest Factor: Availability of
>     Compulsory Process

OOCL has not identified any witness relevant to BNSF's suit that is unwilling to testify in this case and for which compulsory process is not available in this Court. Thus, this factor does not favor transfer. *Cf. Centre One v. Vonage Holdings Corp.*, No. 6:08CV467, 2009 WL 2461003, at *6 (E.D. Tex. Aug. 10, 2009) (concluding this factor is neutral where no unwilling witnesses were identified); *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, No. 3:08-CV-816-G, 2009 WL 464953, at *3 (N.D. Tex. Mar. 25, 2009) (same).

Again OOCL's complaint that this Court lacks jurisdiction over Ihara might be seen as relevant to this factor. But, again, jurisdiction over Ihara bears upon OOCL's claims against Ihara, not upon this suit. And even granting that the two suits are related and

13

perhaps could proceed together, OOCL must do more than show that the Southern District of New York is a more convenient venue for it to pursue its claims against Ihara, Bayer, and Suttons, while defending against BNSF's claims. It must show both that the Southern District of New York would be more convenient for itself and convenient for BNSF as well. *See* 28 U.S.C. § 1404(a) (authorizing transfer for the "convenience of the *parties*") (emphasis added); *see also Aloft Media, LLC v. Adobe Sys.*, No. 6:07-CV-355, 2008 U.S. Dist. LEXIS 23601, at *11 (E.D. Tex. Mar. 25, 2008) (stating that a party seeking transfer under section 1404(a) must show such transfer to be "more convenient for both parties involved"); 15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3849 (3d ed. 2009) ("[S]ection 1404(a) refers to all of the parties to the action, which means that their frequently competing conveniences must be taken into account by the court. Therefore, transfer will be refused on account of this factor if the effect of a change of venue would be merely to shift the inconvenience from one party to the other.").

          c. Private-Interest Factor: Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue." *Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642, 650 (N.D. Tex. 2001). The convenience of non-party witnesses is accorded the most weight. *Ternium Intern. U.S.A. Corp. v. Consol. Sys.*, No. 3:08-CV-

14

0816-G, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009). A party seeking a transfer of venue must do more than make general allegations that key witnesses are unavailable or are inconveniently located. *Am. Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 384 (N.D. Tex. 1996). Rather, the moving party must identify specific witnesses and outline the substance of their testimony. *Id.*

OOCL has not addressed this issue in its briefing. And looking to the nature of BNSF's suit against OOCL, the Court concludes that it does not weigh in favor of transfer. The spill occurred in Kansas. Thus, any witnesses to the spill, members of clean-up crews, land owners whose property was damaged, and other similar witnesses relevant to the spill itself will likely be from Kansas. And witnesses relevant to OOCL's selection and handling of the storage tank involved in the spill will likely come from Tokyo, where the container originated. Given that these witnesses will have to travel similar distances whether this suit proceeds in this Court or in the Southern District of New York, OOCL has not shown that the Southern District of New York is a more convenient venue.

        d.   Private-Interest Factor: Other Practical Considerations

The Court has addressed this factor throughout the foregoing discussion, and chiefly in the paragraphs introducing the discussion of the private- and public-interest factors. OOCL's motion essentially calls upon the Court to transfer this case to the Southern

15

District of New York to be consolidated with a case that, although somewhat factually related, has not been shown by OOCL to be so factually and legally related as to warrant transfer.  And the purpose of the requested transfer appears to be to facilitate the further transfer of this case, along with the New York suit, to the District of Kansas, in violation of the terms of OOCL's agreement with BNSF.  OOCL does so based on no more than considerations of its own convenience.  To the extent that OOCL relies on the fact that this Court does not have jurisdiction over Ihara as a basis for transfer, this is relevant only to OOCL's claims, not to BNSF's claims and, in any event, OOCL is before this Court as part of the first-filed suit to enforce its contact with BNSF as a product of a forum-selection clause within that contract.

e.   Public-Interest Factor: Court Congestion

This factor takes into consideration the speed with which a case may be resolved in the plaintiff's chosen venue and in the proposed transferee venue.  *See In re Genetech, Inc.*, 566 F.3d 1338, 1347 (5th Cir. 2009).  BNSF cites statistics from the Federal Judiciary's website as proof that cases filed in the Northern District of Texas are more quickly disposed of than are cases filed in the Southern District of New York.  And even disregarding these statistics, OOCL has not shown that the congestion of this Court favors transfer of this case to the Southern District of New York.

16

    f. Local Interest in Local Controversy

This factor considers the interest of the locality of the chosen venue in having the suit resolved there. *In re Volkswagen AG*, 371 F.3d at 205-06. This consideration is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation." *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). BNSF has its principal place of business within the Northern District of Texas. Thus, there is a local interest in this case. *See Ternium Int'l U.S.A. Corp.*, 2009 WL 464953, at *5 (citing *Seeberger Enters., Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F.Supp.2d 531, 541 (W.D. Tex.2007) and *Epcon Indus. Sys., L.P. v. Progressive Design, Inc.*, No. H-06-4123, 2007 WL 1234928, at *10 (S.D. Tex. Apr. 25, 2007)). And again, the more important point is that OOCL has not made any showing that residents of the Southern District of New York have such an interest in this suit as to warrant transfer.

    g. Familiarity With the Law and Conflicts of Law

Once again, OOCL's briefing does nothing to address the familiarity and conflicts issues. When the moving party fails to show that the transferee court is more familiar with governing law or to identify any specific conflicts-of-laws issue, these factors do not favor transfer. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 315

17

n.10 (plaintiff's choice of venue must "be treated as a burden of proof question"); *see also AT & T Intellectual Prop. I, L.P. v. Airbiquity, Inc.*, 3:08-CV-1637, 2009 WL 774350, at *6 (N.D. Tex. Mar. 24, 2009) (addressing these factors).

### 3.  The Interest of Justice

Finally, section 1404(a) requires the Court to consider the "interest of justice" in evaluating a motion to transfer.  This phrase embodies an "extremely amorphous and somewhat subjective" concept, but it is nevertheless a factor that requires consideration.  15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3854 (3d. ed. 2009).  Courts have frequently used the phrase as a basis to "avoid multiplicity of litigation as a result of a single transaction or event." *See Seeberger Enters., Inc.*, 502 F. Supp. 2d at 541 (citing 15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3854 (3d. ed. 2009)). But this concern arises when two cases are pending and involve the same parties and issues, or when the transferee court may exercise jurisdiction over an additional defendant or third-party defendant over which the original court does not have jurisdiction. *See* 15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3854 & nn. 4-6, 10 (3d. ed. 2009) (collecting cases).  And to establish that the desire to avoid duplicative litigation weighs in favor of transfer, the moving party must discuss the manner in which the case to be transferred is related to the proceeding pending in the proposed transferee

18

court with regard to facts, legal issues, and parties. Without such discussion establishing extensive overlap between the suit and a realistic possibility of consolidation, this factor is afforded no weight. *See id.* at § 3854 & nn. 9-10.

As discussed above, OOCL has not made this showing. OOCL argues that this suit and the New York suit arise out of the same incident. Admittedly, both suits relate to the chemical spill in Kansas. But BNSF suit's against OOCL is for indemnity under a contract that is wholly separate from OOCL's contracts with Ihara, Bayer, and Suttons. OOCL's suit is for indemnity and will involve contract interpretation; namely, whether Ihara, Bayer, or Suttons qualify as a "merchant" as defined in OOCL's bill of lading. Resolution of this issue will have no bearing on BNSF's ability to recover from OOCL. Thus, there is no substantial overlap of parties and legal and factual issues weighing in favor of transfer. Further, OOCL's ultimate goal is to have both this and the New York suit transferred to the District of Kansas, something that would be contrary to its agreement with BNSF and, therefore, contrary to the interest of justice. *See Ginter v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (noting forum-selection clauses are presumed enforceable unless shown, inter alia, to be against public policy); *Red Bull Associates v. Best Western Int'l, Inc.*, 862 F.2d 963, 966 (2d Cir. 1988) (concluding transfer was not in the interest of justice on public-policy grounds).

III. Conclusion

OOCL has not established that any of the private- or public-interest factors weigh in favor of transfer.  And although OOCL has pointed to a suit pending in its desired transferee court that is related to this suit, it has not established that the two suits are so factually or legally related as to warrant transfer.

Accordingly, OOCL's motion to transfer is DENIED.

SIGNED October 14, 2009.

                                                TERRY R. MEANS
                                                UNITED STATES DISTRICT JUDGE